UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CSL AUSTRALIA PTY. LTD.,

       Plaintiff,

- against -

BRITANNIA BULKERS PLC,
BRITANNIA BULK PLC, BRITANNIA
BULK A/S,

       Defendants.

**OPINION AND ORDER**

08 Civ. 8290 (PKL)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/8/09

WATSON, FARLEY & WILLIAMS, LLP
1133 Avenue of the Americas
New York, NY  10036
Neil A. Quartaro, Esq.

Attorneys for Plaintiff


HOLLAND & KNIGHT, LLP
195 Broadway
New York, NY  10007-3189
James H. Power, Esq.

Attorneys for Defendants

**LEISURE, District Judge:**

Defendant Britannia Bulkers A/S ("Britannia A/S") seeks to vacate a maritime attachment issued in favor of plaintiff CSL Australia Pty. Ltd. ("CSL"). A hearing was held on July 30, 2009. For the reasons stated below, Britannia A/S's motion to vacate is GRANTED.

## BACKGROUND[1]

Plaintiff CSL is a foreign corporation organized under the laws of Australia and has a place of business in St. Leonard's, N.S.W., Australia. Defendant Britannia A/S is organized under the laws of Denmark with its principal and only place of business in Svendborg, Denmark. Jurisdiction is premised on Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

A. The Rule B Action

Plaintiff initiated this action on September 26, 2008, seeking security for a potential arbitration judgment in connection with Britannia Bulkers Plc's ("Britannia") alleged breach of a time charter. An ex parte order directing the clerk to issue process of maritime attachment and garnishment against

---

[1] The factual and procedural summary below derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: the verified amended complaint and amended ex parte attachment order; letters dated April 27, 2009 (Dkt. No. 23), July 23, 2009 (Dkt. No. 25), and August 13, 2009 (Dkt. No. 27) from James H. Power, Esq.; a letter from Hans Engberg, Presiding Judge in the Court in Svendborg, Denmark, Bankruptcy Division, faxed to this Court on August 14, 2009 ("Judge Engberg Ltr.") (Dkt. No. 29); and letters dated April 29, 2009 (Dkt. No. 24), July 23, 2009 (Dkt. No. 26), and August 13, 2009 (Dkt. No. 28) from Neil Quartaro, Esq. Except as quoted or otherwise cited, no other specific reference to these documents will be made.

Britannia pursuant to Admiralty Rule B in an amount up to $2,443,870 was issued that same day. On or about October 1-2, 2008, electronic funds transfers ("EFT's") in the amount of $2,443,870 belonging to Britannia A/S, which plaintiff contends were for the benefit of Britannia, were restrained pursuant to the attachment order. Plaintiff subsequently filed a verified amended complaint naming Britannia Bulk Plc ("Bulk") and Britannia A/S as additional alter-ego defendants[2] and, on October 14, 2008, obtained from this Court an Amended Ex Parte Order and Process of Maritime Attachment and Garnishment.

This is the second time defendant Britannia A/S seeks vacatur of the writ of attachment. Previously, by way of order to show cause dated October 15, 2008, Britannia A/S moved to vacate the attachment of EFT's naming Britannia A/S on the grounds that, at the time those funds were attached, Britannia A/S was not named in the verified complaint.[3] The Court denied Britannia A/S's motion to vacate the attachment at the October 22, 2008 Rule E(4)(f) hearing. (See Order dated Oct. 27, 2008, Dkt. No. 17.)

---

[2] Plaintiff's verified amended complaint states that Britannia is a holding company for interrelated subsidiaries, including Bulk and Britannia A/S. (Am. Compl. ¶ 3.) Plaintiff contends that all three defendants share a common purpose and operate as part of a single enterprise. (Id. ¶ 9.)
[3] Britannia A/S filed its motion one day after the Court so-ordered CSL's amended writ of attachment; defendant was apparently unaware that it was a party to the amended writ when it prepared its motion papers.

The underlying dispute was referred to arbitration in Singapore. On or about January 10, 2009, plaintiff obtained an arbitration award of $1,037,033.88 against Britannia.[4]

B.   The Bankruptcy Cases

On October 31, 2008, Bulk commenced insolvency proceedings in London. On November 20, 2008, Britannia A/S was declared bankrupt in its home jurisdiction of Denmark,[5] and the Court in Svendborg, Denmark, Bankruptcy Division (the "Danish Court") appointed Ann Birgitte Gammeljord of Gorrisen Federspiel Kierkegaard as trustee of Britannia A/S (the "Trustee"). On January 30, 2009, the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issued an order recognizing Britannia A/S's Danish bankruptcy proceeding as a foreign main proceeding for purposes of chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"). See In re Britannia Bulkers A/S, No. 08-15187 (Bankr. S.D.N.Y. 2009). In a letter dated April 27, 2009, Mr. James Power, Esq., counsel for Britannia A/S and the Trustee, notified this Court that the Bankruptcy Court also recognized Bulk's insolvency proceedings in the United

---

[4] The arbitrators did not rule on the alter-ego issue, and plaintiff obtained an arbitral award against Britannia only. Plaintiff asserts that it could not have advanced alter-ego allegations in the underlying arbitration because, once Bulk and Britannia A/S were declared bankrupt entities, a stay was in place that prevented arbitration against those debtors. (Vacate Hrg. Tr., July 30, 2009, 20:17-24.) Thus, plaintiff contends that naming the alleged alter-ego defendants as parties to the arbitration "would have shut down the arbitration, effectively." (Id. 21:2-3.)

[5] It appears that an involuntary bankruptcy petition was filed against Britannia A/S by one of its unsecured creditors.

3

Kingdom as a foreign main proceeding under chapter 15 of the Bankruptcy Code. (See Dkt. No. 23.)  As a result, the Bankruptcy Code's automatic stay is in effect with respect to both Britannia A/S and Bulk.

Because the final arbitration award is substantially lower than the amount of funds plaintiff restrained pursuant to the Rule B attachment, the parties agreed to reduce plaintiff's security.  On May 5, 2009, the Court so-ordered the parties' Consent Order entrusting the oversecurity to the Trustee for administration in Britannia A/S's Danish bankruptcy proceeding.  (See Dkt. No. 19.)  Presently, $1,008,854.69 remains under attachment.

### C. Instant Relief Requested

Britannia A/S, along with the Trustee in Britannia A/S's Danish bankruptcy case, now request that the Court vacate the Rule B attachment and turn over the funds that remain under attachment to the Trustee for administration in Britannia A/S's Danish bankruptcy proceeding.  Plaintiff opposes defendant's motion, and instead proposes to petition the Bankruptcy Court to lift the automatic stay so that plaintiff can (i) pursue its alter-ego allegations against defendants in this Court and (ii) confirm as judgment of this Court an arbitration award of

4

$1,037,033.88 obtained on January 10, 2009 against Britannia.[6] The parties discussed both requests with the Court on the record at a conference held on July 30, 2009. In light of the parties' letter briefs and arguments made on the record, the parties were instructed to submit evidence regarding the extraterritorial application of the Danish bankruptcy provision requiring dissolution of pre-bankruptcy attachments, and any other information responsive to the Court's questions at the July 30 conference, within two weeks. Both parties complied with the Court's request.

## DISCUSSION

### I. Applicable Law

#### A. Rule B Attachments

The two purposes of maritime attachments are "to obtain jurisdiction of the respondent *in personam* through his property [and] to assure satisfaction of any decree in libelant's favor." Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 581-82 (2d Cir. 1963). When a defendant moves to vacate an attachment pursuant to Admiralty Rule E, the plaintiff bears the

---

[6] The verified amended complaint includes a request that the Court retain jurisdiction over this matter "through the entry of any award or judgment associated with any of the claims currently pending." (Am. Compl. at 8 ¶ c.) However, plaintiff has not invoked 9 U.S.C. §§ 201-08, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, as an independent basis of jurisdiction in this action. To the extent CSL seeks to confirm its arbitration award as against Britannia, the only non-bankrupt entity in this case, the verified amended complaint does not plead adequately a basis for such relief.

5

burden of showing that the filing and service requirements of Admiralty Rules B and E were met and that

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) (footnote omitted). A defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), advisory committee's note.[7] In addition, "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965).

Here, Britannia A/S does not renew any arguments regarding alleged deficiencies in the filing or service of the Rule B attachment or any other grounds for vacatur previously made, and denied, at the October 22, 2008 Rule E(4)(f) hearing. Rather, Britannia A/S argues that (i) Britannia A/S's Danish bankruptcy, and recognition under chapter 15 of the Bankruptcy Code, constitutes a "statutory bar" to the continued attachment of

---

[7] Although declining to define the precise scope of a district court's equitable power to vacate an otherwise proper attachment, the Second Circuit noted, in dicta in Aqua Stoli, that there are other limited circumstances not present in this case where the requirements of Rules B and E have been satisfied but where vacatur of an attachment may nevertheless be justified. 460 F.3d at 445.

6

Britannia A/S's funds in this District, and (ii) this Court should exercise its discretion and grant comity to Britannia A/S's Danish bankruptcy proceedings, pursuant to which all pre-bankruptcy attachments dissolve as of the date of the bankruptcy.

    B.    <u>International Comity and Foreign Bankruptcies</u>

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." <u>Hilton v. Guyot</u>, 159 U.S. 113, 164 (1895). The Second Circuit has "repeatedly noted the importance of extending comity to foreign bankruptcy proceedings," <u>Finanz AG Zurich v. Banco Economico S.A.</u>, 192 F.3d 240, 246 (2d Cir. 1999), since "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." <u>Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.</u>, 825 F.2d 709, 713-14 (2d Cir. 1987) (Newman, J.) (affirming district court's vacatur of maritime attachment against debtor in Swedish bankruptcy proceeding and noting the particular need to extend comity to foreign bankruptcy proceedings); accord <u>Cunard S.S. Co. v. Salen Reefer Servs. AB</u>, 773 F.2d 452, 458 (2d Cir. 1985) (affirming district court's vacatur of Rule B attachment against

7

debtor in Swedish bankruptcy proceeding and noting "[t]he granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion"); see also JP Morgan Chase Bank v. Altos Hornos de Mexico S.A. de C.V., 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." (citation omitted)).

Courts grant comity to foreign bankruptcies if those proceedings do not violate the laws or public policy of the United States, see Cunard, 773 F.2d at 457, and if the foreign proceedings are procedurally fair, Altos Hornos, 412 F.3d at 424 (citation omitted). The burden of establishing international comity rests on the party asserting it. Maersk, Inc. v. Neewra, Inc., No. 05 Civ. 4356, 2008 U.S. Dist. LEXIS 37209, at *4 (S.D.N.Y. May 6, 2008). However, the decision whether to grant international comity lies within the discretion of the Court. Id.

    C.   Chapter 15 of the Bankruptcy Code

The Court notes that Victrix and Cunard, cited above, were decided under former Bankruptcy Code § 304, which has now been replaced by chapter 15 of the Bankruptcy Code. See In re Atlas Shipping A/S, No. 09-10314, 2009 Bankr. LEXIS 893, at *9-10

(Bankr. S.D.N.Y. Apr. 27, 2009). "The philosophies underlying former § 304 were deference to the foreign proceeding and the prevention of the piecemeal distribution of the debtor's estate." Id. Chapter 15, which deals with cross-border insolvencies, "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief." Id. at *25-26. "Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." Id. at *26 (citation omitted).[8]

## II. Application

The Court finds that vacatur of the amended order of attachment is supported by principles of comity. The Court has reviewed the unrebutted evidence Britannia A/S has proffered on Danish bankruptcy law. Nothing in the record indicates that deference to the Danish Court would violate or infringe the laws or public policy of the United States, or that the Danish proceedings are procedurally unfair.

Danish bankruptcy law is not dissimilar to the federal Bankruptcy Code. The guiding premise of both U.S. and Danish

---

[8] Judge Gerber's January 30, 2009 Order recognizing Britannia A/S's Danish bankruptcy proceeding states that the Danish proceeding "shall be granted comity and be given full force and effect."

9

bankruptcy law is equality of distribution among creditors. Once an insolvent entity is declared bankrupt in Denmark, a trustee takes control of the management of the debtor's business, and a creditors' committee may be formed to work with the Trustee. (See 7/23/09 Ltr. from James H. Power to the Hon. Peter K. Leisure, Dkt. No. 25, at 2-3.)  The Trustee is charged with (i) continuing the debtor's business for so long as such operation is beneficial to creditors, (ii) asset sales, (iii) investigating and prosecuting voidable transactions, (iv) investigating and approving claims against the estate, and (v) preparing a proposed distribution of the estate for the Danish Court's approval. (Id.)  Unsecured creditors are prohibited from pursuing their individual claims outside of the bankruptcy proceedings. (See 8/13/09 Ltr. from James H. Power, Esq. to Hon. Peter K. Leisure ("8/13/09 Power Ltr."), Ex. A at 2.)

In addition, the Trustee and the presiding judge in Britannia A/S's bankruptcy case represent that, under Section 31(3) of part 4 of the Danish Bankruptcy Act of 1977 (the "Danish Bankruptcy Code"), attachments made prior to commencement of the Danish bankruptcy case automatically and unconditionally lapse. (See id.; Judge Engberg Ltr., Dkt. No. 29.)  As of the date of the bankruptcy, property of the debtor, wherever located, and including any funds subject to any pre-

bankruptcy attachment, becomes part of the debtor's estate and will be distributed to unsecured creditors in accordance with the Danish Bankruptcy Code. (8/13/09 Power Ltr. Ex. A at 2-3 (citing Section 32 of the Danish Bankruptcy Code).) Accordingly, the Trustee opines that, under the Danish Bankruptcy Code, a Rule B attachment would lapse as of the date of the bankruptcy and would be included as property of the estate. (See id.)

In this vein, "[p]ermitting the Rule B attachment to stand would run afoul of principles of international comity," Transfield ER Cape Ltd. v. STX Pan Ocean Co., No. 09 Civ. 1250, 2009 U.S. Dist. LEXIS 21185, at *13 (S.D.N.Y. Mar. 17, 2009) (Koeltl, J.), by enabling CSL to make an end-run around the Danish Court's explicit proscription against disposition of a debtor's property outside of the bankruptcy proceeding, and the unconditional dissolution under the Danish Bankruptcy Code of all attachments made prior to the bankruptcy. See Altos Hornos, 412 F.3d at 427 (noting that recognition that appellant owned the disputed funds would determine how those funds were distributed to creditors and therefore such determination was "precisely the sort of end-run around a parallel foreign bankruptcy proceeding of which we have repeatedly disapproved" (citations omitted)).

In a similar situation, In re Atlas, currently proceeding under chapter 15 of the Bankruptcy Code, the Bankruptcy Court vacated certain Rule B attachments against Atlas Shipping ("Atlas") and related companies, and turned garnished funds over to the foreign representative for administration in Atlas's Danish bankruptcy proceeding. Some of the attachments against Atlas were obtained before the chapter 15 petitions were filed, although neither Atlas nor the foreign representative sought to vacate those attachments in the district court under Rule E(4)(f). Id. at *9.

Atlas's foreign representative argued that the Bankruptcy Court should grant comity to the Danish bankruptcy proceeding by applying provisions of Danish bankruptcy law that would dissolve all pre-bankruptcy attachments as a matter of law. Id. at *11-12. The Bankruptcy Court granted comity to the proceedings in Denmark and dissolved the pre-Danish-bankruptcy attachments,[9] id. at *20, reasoning that the foreign bankruptcy proceeding provided a forum for all creditors seeking to satisfy their claims against Atlas, so that the Rule B plaintiffs were "not left to scour the globe for the debtor's assets." Id. at *36. The foreign creditors that obtained the Rule B attachments would also have no greater advantage than other unsecured creditors in

---

[9] Although the Bankruptcy Court questioned whether the scope of the Danish statute was as broad as the foreign representative made it out to be, the foreign representative's evidence of Danish bankruptcy law was unrebutted.

12

Atlas's bankruptcy proceedings. Id.  Finally, the release of garnished funds to the foreign representative was without prejudice to the foreign creditors' rights, if any, to assert in the Danish bankruptcy court their entitlement to the previously garnished funds. Id. at *38.

The reasoning and outcome in In re Atlas is persuasive. Here, as in In re Atlas, there are no U.S. claimants, and CSL's claim has no connection to the United States apart from CSL's garnishment of EFT's passing through New York banks.  Moreover, the Court finds no indication that CSL "will be prejudiced or treated unjustly" if required to pursue its alter-ego claim and assert its rights to the funds in question in the Danish Court, as the Danish Bankruptcy Code provides for equal distribution of the estate to all unsecured creditors, both Danish and foreign. See Cunard S.S., 733 F.2d at 459.  Moreover, it is appropriate for the Danish Court to determine what benefit, if any, CSL should enjoy from having obtained the Rule B attachment in this District. Victrix, 825 F.2d at 715.

Plaintiff seeks to distinguish this case from In re Atlas, and the Bankruptcy Court's conclusion that the pre-attachment bankruptcy creditors could pursue their claims in Atlas's Danish bankruptcy proceedings. (Id. 16:5-14.)  Plaintiff argues that, here, CSL will not be able to pursue its claim in the Danish Court because it is unlikely that court may exercise

13

jurisdiction over Britannia and Bulk, which are U.K. entities. (Id. 15:12-16, 16:10-14.)  In plaintiff's view, the only possible jurisdiction where the instant dispute can be resolved is this District, where plaintiff contends all three defendants are jurisdictionally present. (8/13/09 Ltr. from Neil Quartaro, Esq., to the Hon. Peter K. Leisure, Dkt. No. 28, at 3.)

    However, the Court is unconvinced by plaintiff's argument that it will not have the opportunity to assert its claim against Britannia A/S in the Danish Court.  The substance of plaintiff's alter-ego allegation is that defendants are all part of a "web of companies with very similar names," with Britannia A/S acting as paying agent for the charter hires of the larger group of companies, including charter hire payments for vessels that Britannia A/S owns. (Id. 11:22-12:1.)  Insofar as CSL now seeks to satisfy its arbitral award against funds belonging to Britannia A/S, on the basis that those EFT's were made on behalf of and for the benefit of Britannia A/S's alter-ego, it appears that the Danish Court is in the best position to assess whether such circumstances indicate CSL's claim is enforceable against property of the debtor's estate.  Granting comity is appropriate here as it will facilitate bringing together all of Britannia A/S's claimants worldwide into one forum, thus enabling the orderly and equitable distribution of Britannia A/S's assets. (See Judge Engberg Ltr., Dkt. No. 29.)

In its opposition to vacatur, plaintiff also claims that it is unclear who owns the attached funds, perhaps in an attempt to cast doubt on whether the attached funds are property of the debtor's estate and thus subject to the jurisdiction of the Danish bankruptcy court. See Victrix 825 F.2d at 715 ("Deference to the [foreign] bankruptcy court is appropriate so long as the attached funds are subjected to the jurisdiction of that court."). Plaintiff cites Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag), 961 F.2d 341, 348 (2d Cir. 1992) (holding that where there is a bona fide dispute as to ownership of property a debtor claims as part of its estate in a foreign bankruptcy proceeding, the court must first make a threshold determination of ownership before such property may be turned over to a foreign representative), which is a limited exception to the rule of international comity.

In In re Koreag, Refco deposited U.S. currency into a bank account owned by the debtor, Mebco, so that Mebco could exchange those U.S. funds for foreign currency; Mebco did not, in fact, exchange the funds and instead filed for bankruptcy. Id. at 344-45. Refco sued Mebco in this District, claiming that it owned the U.S. funds deposited in Mebco's account. Id. at 346. Koreag, the appointed liquidator for Mebco's Swiss bankruptcy case, intervened and moved to dismiss on the basis of international comity. Id. The district court determined that the claim should

15

be resolved in a "turnover" proceeding under former Bankruptcy Code § 304(b)(2). Id. The bankruptcy court subsequently declined to make a determination as to ownership, and held that international comity warranted turning over the assets to Koreag. Id. at 346-47.

The Second Circuit vacated the district court's order and remanded the matter for reconsideration, holding that valid disputes over ownership of assets do not necessarily implicate the concerns normally underlying international comity abstention in foreign bankruptcy proceedings. In re Koreag, 961 F.2d at 349; see Altos Hornos, 412 F.3d at 425. Therefore, "U.S. courts may resolve *bona fide* questions of property ownership arising under local law while a foreign bankruptcy proceeding is ongoing without deferring to the parallel foreign proceeding on grounds of international comity." Altos Hornos, 412 F.3d at 426. In In re Koreag, since Refco was not asserting its rights like a bankruptcy creditor, but rather as owner of the disputed currency, Refco's claim could have properly been adjudicated in a U.S. court. Id. at 425 (citing In re Koreag at 961 F.2d at 349).

Here, the so-called "Koreag exception" is inapplicable because CSL does not raise a bona fide ownership dispute with respect to the EFT's in the name of Britannia A/S that were restrained pursuant to the Court's attachment order, and

16

therefore abstention on the basis of international comity is warranted.  As the Second Circuit affirmed in Altos Hornos, the Koreag exception "only applies to bona fide property ownership questions," and not where the "alleged ownership claim is simply a creditor's thinly veiled attempt to extract partial payment from the debtor on the debt owed outside a foreign bankruptcy proceeding." Id. at 427.  Here, there is no dispute that Britannia A/S is either the originator or beneficiary of all EFT's restrained in this case, and thus has a property interest in the attached EFT's. See Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 276-78 (2d Cir. 2002).  Indeed, CSL has never asserted that it actually owns the funds restrained pursuant to the writ of attachment, nor do defendants dispute that the attached funds belong to Britannia A/S. (Vacate Hrg. Tr. 13:3-5, July 30, 2009.)  Instead, CSL's posture is that of a creditor seeking payment on a debt that is better addressed in Britannia A/S's foreign bankruptcy proceeding.  In addition, the fact that a portion of the funds attached as oversecurity were turned over to the Danish Trustee belies CSL's contention that the attached funds do not belong to Britannia A/S.  Moreover, no party has suggested that, if the attachment is vacated, the funds should not be turned over to the Trustee.

## CONCLUSION

For the reasons stated above, Britannia A/S's request to vacate the amended order of attachment is GRANTED. As the parties previously agreed in their May 5, 2009 Consent Order, any funds in the name of Britannia A/S restrained pursuant to that order shall be transferred to Holland & Knight LLP for turnover to the Trustee for administration of the Danish Court in Britannia A/S's pending Danish bankruptcy proceeding. Because attachment is the only basis for jurisdiction over defendants in this Court, this action is dismissed without prejudice. The Clerk of Court is instructed to close this case. The Court further directs that if CSL ever commences a new action in this District concerning the dispute at issue in the verified amended complaint, CSL shall designate the new action as related to this action.

**SO ORDERED.**
**New York, New York**
September **8**, 2009

_Peter K. Leisure_
U.S.D.J.